[No. 20745. In Bank. — May 19, 1891.]

THE PEOPLE, RESPONDENT, v. H. L. FICK, APPEL-
LANT.

CRIMINAL LAW — KIDNAPING — TAKING WOMAN ARRESTED TO HOUSE OF
ILL-FAME — REPUTATION OF HOUSE — EVIDENCE. — Upon the trial of a
defendant charged with kidnaping, where it is shown that the defend-
ant was a constable, and that, under a warrant of arrest, he arrested a
certain Chinawoman, but did not take her, in obedience to the warrant,
before any magistrate, but, instead, left her at a house of ill-fame, evi-
dence is admissible to show the general reputation of such house.

ID. — FALSE ARREST OF HUSBAND — IMMATERIAL EVIDENCE. — Upon the
trial of such charge, evidence that the husband of the arrested China-
woman was arrested at the same time by another constable, and confined
in jail two nights, and then released on bail, and that he was in fact
innocent of the charge preferred against him, is immaterial, and its ad-
mission is not prejudicial error.

ID. — MISNOMER OF PROSECUTRIX — IDEM SONANS — QUESTION OF FACT. —
The question whether the name "Toy Fong," the true name of the
prosecutrix, is idem sonans with "Choy Fong," the name given in the in-
dictment, is one of fact for the jury, and the court will not say, as a
matter of law, that these names, as usually spoken by the Chinese, do
not have the same sound.

ID. — INDICTMENT — FOLLOWING STATUTE — PURPOSE OF KIDNAPER — EVI-
DENCE. — The acts constituting the crime of kidnaping are sufficiently
alleged if the indictment follows the language of the statute defining
the offense; and an allegation as to the purpose of the kidnaper is sur-
plusage, and need not be proved.

ID. — INTENTION INDICATED BY ACTS. — In determining the intention of the
defendant, it is reasonable to believe that when he made the arrest he
intended to do with his prisoner what the evidence shows he did do, and
that he had no other purpose. Acts indicate the intention, and the law,
in some cases, judges of a man's previous intentions by his subsequent
actions.

ID. — CONTINUOUS ACT — WARRANT OF ARREST — JUSTIFICATION. — The ar-
rest, by the defendant, of the prosecutrix, her conveyance into another
county, and the placing of her in a house of ill-fame constitute one con-
tinuous act, and the fact that the defendant was acting under a warrant
regular on its face does not afford any justification of the offense.

ID. — STRICT COMPLIANCE WITH WARRANT — FAILURE OF JUSTIFICATION. —
One who arrests the person of another by legal process or other equiv-
alent authority conferred on him by law can only justify himself by a
strict compliance with the requirements of such process or authority,
and if he fails to execute or return the process as thereby required, or to
do what the law required him to do in making the arrest, his whole jus-
tification fails.

ID. — GOOD FAITH AS TO ARREST — KIDNAPING BY OFFICER. — If an arrest
under a warrant is made in good faith, with the intention of obeying its

commands, the officer cannot be found guilty of kidnaping, although he afterward allows the arrested person to escape; but if the arrest was not made in good faith, and was made without the intention of taking the arrested person before any magistrate, and the arrested person was not in fact taken before any magistrate, the officer may be convicted of the crime of kidnaping.

ID. — JUDGMENT— DISTRICT ATTORNEY'S FEE— MODIFICATION UPON APPEAL. — A judgment that a defendant convicted of kidnaping be imprisoned for a stated period, and directing that he also pay the district attorney a specified fee, is unauthorized as to the portion directing the payment of the fee, and will be modified, upon appeal, by striking out the latter portion, without remanding the case..

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*John M. Fulweiler*, and *Ben P. Tabor*, for Appellant..

The court erred in the admission of evidence as to the general reputation of the house in which China Molly lived. (Code Civ. Proc., sec. 1145; Pen. Code, sec. 1102.) The court erred in the admission of evidence as to where Go Sam was taken in Sacramento after he left the defendant at the depot in that city, and what was done to him there. (*People* v. *Moon,* 45 Cal. 19; *People* v. *English,* 52 Cal. 212; *Phœnix Ins. Co.* v. *Moog,* 78 Ala. 284; 56 Am. Rep. 31; *Sundry Goods* v. *United States,* 27 U. S. 358; *Nudd* v. *Burrows,* 91 U. S. 438; *People* v. *Aleck,* 61 Cal. 137; *People* v. *Stanley,* 47 Cal. 114; 17 Am. Rep. 401; *People* v. *Uwahah,* 61 Cal. 142; *Long* v. *State,* 13 Tex. App. 211.) The identity of goods charged to have been stolen must be proved as charged. (2 Bishop's Crim. Proc., sec. 673; *People* v. *Coon,* 45 Cal. 672.) If this be the rule as to identity in larceny, the analogy certainly holds good here. There being no proof of the taking of "Choy Fong," but evidence showing that "Toy Fong" was taken, it was error in the court to refuse the instruction asked. (Wharton's Crim. Law, 2d ed., 218.) An officer acting upon a warrant regular upon

its face is protected. (Sewell on Sheriffs, 99; Crocker on Sheriffs, 38, 39, 126, 383; 2 Hilliard on Torts, 184; 1 Waterman on Trespass, 302; *Savacool* v. *Boughton*, 5 Wend. 170; 21 Am. Dec. 181; *Erskine* v. *Hohnbach*, 14 Wall. 613.) The judgment provides for the payment of a fee to the district attorney, which is not authorized by law, and the judgment, which must stand or fall as an entirety, is void.

*Attorney-General Johnson*, for Respondent.

Evidence as to the reputation of the house in which China Molly lived was relevant to show the ill-repute of the house on the question of the defendant's intent. (Wharton's Crim. Ev., sec. 261; Stats. 1873–74, p. 84; Pen. Code, p. 597.) There was no variance between the indictment and the proof, the names "Choy Fong" and "Toy Fong" being *idem sonans*. It is well known that it is difficult for us to pronounce, accurately, Chinese names. (*People* v. *Cummings*, 57 Cal. 88; *People* v. *Oreileus*, 79 Cal. 178; Pen. Code, sec. 960; *Wells* v. *State*, 4 Tex. App. 20; Wharton's Crim. Prac., 9th ed., sec. 119; Wharton's Crim. Ev., sec. 96.) Even should it be conceded that there was no evidence of the intent on the part of the defendant to unlawfully employ Choy Fong for the unlawful use of the persons named, such proof was not necessary to make out the crime. (Pen. Code, sec. 207.) Surplusage does not vitiate the indictment. (Wharton's Crim. Prac., 9th ed., sec. 158; *King* v. *Jones*, 2 Barn. & Adol. 611; *Smith* v. *State*, 85 Ind. 553; *Dunham* v. *State*, 9 Tex. App. 330; *Scott* v. *Com.*, 6 Serg. & R. 224.) Although the portion of the judgment imposing a fine is unauthorized, the rest of the judgment will stand. (*Ex parte Mitchell*, 70 Cal. 1.)

DE HAVEN, J. — The defendant, H. L. Fick, was indicted by a grand jury of San Joaquin County for the

crime of kidnaping. Upon his trial the jury found him guilty as charged. His motion for a new trial was denied, and judgment given that he be imprisoned in the state prison for eight years, *and that he pay the district attorney a fee of twenty-five dollars.*

From this judgment and the order denying his motion for a new trial, the defendant appeals.

It was shown upon the trial that the defendant was, at the date of the alleged commission of the offense charged, a constable of township No. 3, Placer County, and that there was delivered to him, on March 22, 1890, a warrant in due form, issued by a justice of the peace within said county, commanding him to arrest one *Poy Fong,* and to bring her forthwith before said justice at his office, in said county, or in case of his absence or inability to act, before the nearest and most accessible magistrate of the county. The defendant, armed with this process, proceeded to the county of San Joaquin, and on March 24, 1890, arrested a Chinawoman, whose name is given in the evidence as *Toy Fong.* This woman he took to the county of Placer, but did not at any time take her before the justice issuing the warrant, or any magistrate, but, instead, left her at the house of one China Molly, the person on whose complaint the warrant was issued.

The appellant assigns as error various rulings of the court in the admission of testimony, and in giving and refusing instructions.

1. The court did not err in admitting evidence that the general reputation of the house in which China Molly lived was of ill-fame. It was to this house that the defendant took the woman he was charged with kidnaping, and where he left her. This appearing, it was not improper to show that this house was of ill-fame, and it was competent to prove the fact by evidence of general reputation. That appellant left the woman at a house of such a character, and did not thereafter take

her before a magistrate, were matters proper for the jury to consider in passing upon his intent in making the arrest and bringing her into the county of Placer. The evidence tended in some degree to furnish an explanation or motive for the act of appellant in failing to comply with the mandate of the warrant held by him.

2. In going to San Joaquin County, the appellant was accompanied from Sacramento City by a constable of that city, named Swift, and at the same time the woman was arrested, Swift, who seems to have had a warrant therefor, legal upon its face, arrested her husband, Go Sam. Testimony was admitted, appellant objecting thereto, showing that Go Sam was taken to Sacramento City, kept in jail two nights, and then released on bail. The prosecution was further permitted to show, by Go Sam, that he was in fact innocent of the alleged crime for which he was arrested. If it should be conceded that by a strict application of the rule which requires evidence to be confined to the points in issue, this testimony should have been excluded, still, we cannot see how its admission prejudiced the case of appellant. So far as we can see from the record, this evidence had no tendency to show that appellant was guilty of the crime with which he was charged, and it must have been disregarded by the jury as immaterial. A mere technical error in the admission of immaterial evidence, which is of such a character that it is apparent it could have no tendency to excite a prejudice against a defendant on trial, is not cause for the reversal of a judgment.

3. The appellant was charged with kidnaping one Choy Fong. Upon the trial the name of the woman actually taken was shown to be Toy Fong. The appellant requested the court to charge the jury " that testimony proving, or tending to prove, that one Toy Fong was . . . . taken from said county of San Joaquin by the defendant into the county of Placer will not sustain

a conviction under said indictment for so taking Choy Fong." The court refused to so charge.

The question whether the name "Toy Fong" is *idem sonans* with "Choy Fong," and so both relate to the same person, was, in this case, one of fact for the jury, and not a question of law for the court to determine. In the case of *Com.* v. *Donovan*, 13 Allen, 571, the defendant was charged with larceny from one John Mealy. At the trial this person was called, and testified that his name was spelled *Malay* or *Maley*, but never *Mealy*, and that he was called *Maley*, but never *Mealy*. The trial court declined to instruct the jury "that if they should find his name to be Maley or Malay, and not Mealy, then they should acquit the defendant," but left it to the jury to determine whether the name proved was *idem sonans* with that given in the indictment, and this ruling was approved on appeal to the supreme court, that court saying: "The question whether one name is *idem sonans* with another is not a question of spelling, but of pronunciation, depending less upon the rule than upon the usage, which, when it arises in evidence on the general issue, is for the jury, and not for the court, and was rightly submitted to the jury in this case."

This rule applies with peculiar force here, where the question relates to the pronunciation of Chinese proper names. The court cannot say, as a matter of law, that the names mentioned in the instruction asked for, as usually spoken by that people, do not have the same sound.

The instructions given, in the absence of a request from the defendant for more specific directions as to the right and duty of the jury to determine the particular question, were sufficiently definite, and we must presume that the jury passed upon the question, as it was their province to do, and found from the evidence that these names, "Choy Fong" and "Toy Fong," are pronounced alike.

4. The indictment charges that the woman, Choy

Fong, was forcibly taken from San Joaquin County " for the purpose and with the intent to willfully and feloniously employ her, said Choy Fong, for the use, unlawfully, of the said Mow Lin Gut and Ah Young, *alias* China Molly."

The court gave the following instruction to the jury: " If you believe from the evidence, beyond a reasonable doubt, that the defendant, H. L. Fick, did, on or about the twenty-fourth day of March, 1890, and before the finding of said indictment, willfully, unlawfully, feloniously, and forcibly take the woman named in the indictment, Choy Fong, against her free will or consent, from the county of San Joaquin, in this state, and carry her into the county of Placer, in this state, then you will say in your verdict: ' We, the jury, find the defendant, H. L. Fick, guilty.' " In giving this instruction the court committed no error. The words above quoted from the indictment, as to the purpose and intent of defendant, are surplusage. Under section 207 of the Penal Code, " every person who forcibly steals, takes, or arrests any person in this state, and carries him into another . . . . county," is guilty of kidnaping. The language just quoted necessarily implies that the arrest and conveying to another county must be without the consent of the person injured, and without any lawful authority therefor; but the particular purpose intended to be accomplished by such unlawful act is immaterial. The crime consists of a false imprisonment, aggravated by a removal to another county, and these acts are sufficiently alleged when the indictment is in the language of the statute defining the offense. The allegation as to the purpose of defendant being surplusage, it was not necessary for the prosecution to prove such purpose, or for the jury to find it to exist, and the instruction just quoted was correct.

5. Appellant claims that in taking the woman from San Joaquin to Placer County he committed no crime,

because he was acting under a warrant regular on its face, and that such action being lawful, it did not become a crime by reason of his subsequent failure to take her before a magistrate in the latter county, and that not only did the court err in its instruction upon this point, but that the verdict is against the evidence. The error of this contention is in its assumption that in what appellant did he was acting in obedience to the warrant in his possession, and in its denial of the right to look at the entire transaction for the purpose not only of determining whether the appellant did pursue the authority with which he was clothed, but also whether any departure from such authority was willful, and with the intention of disregarding the personal rights of the woman taken by him. It is a maxim of the law, and its correctness is shown by human experience, that acts indicate the intention, and in conformity with this, the law, in some cases, judges of a man's previous intentions by his subsequent actions. (Broom's Legal Maxims, 271.) In this case the arrest of the woman, her conveyance into Placer County, and there placing her in the house of China Molly, constitute one continuous act; and for the purpose of determining the intention of defendant when he made the arrest, or at any other time while he had the woman in custody, it is proper to look at the entire transaction as one act, from its beginning to its consummation. Thus viewing it, it is not unreasonable to believe that appellant, when he made the arrest, intended to do with his prisoner just what the evidence shows that he did do, and that he had no other purpose. In other words, that her arrest was simply a means to the end he had in view; that he never intended to take her before a magistrate, but did intend to place her in the charge of China Molly. Such an act was unlawful, and as the warrant under which appellant claims that he acted never authorized such a proceeding, it affords no justification for the

act now under consideration. If an officer desires the protection which the law always gives to one who acts under its authority, he must keep within the limits of its commands. If he arrests under a warrant, he must follow its directions in dealing with his prisoner. The rule is, that "one who arrests the person of another by legal process, or other equivalent authority conferred upon him by law, can only justify himself by a strict compliance with the requirements of such process or authority. If he fails to execute or return the process as thereby required, or to do what the law required him to do in making the arrest, his whole justification fails." (*Phillips* v. *Fadden,* 125 Mass. 198.)

In *Brock* v. *Stimson,* 108 Mass. 521, 11 Am. Rep. 390, referring to the principle which holds an officer to be a trespasser *ab initio* for an abuse in the execution of process, it is said: "The same rule holds good in the case of an officer who, after arresting a person on criminal process, omits to perform the duty required by the law, of taking him before a court."

The case here is unlike that of *Ex parte Sternes,* 82 Cal. 245. In that case it appeared that the officer acted under a lawful warrant, and did precisely what he was thereby commanded to do, and it was held that he had committed no crime in so doing.

The instructions given by the court below upon the point we are now considering were full and complete, and the one given by the court of its own motion seems to have been prepared by the learned judge with unusual care, and states with precision the law applicable to the evidence before the jury. By this the jury were instructed that if the appellant arrested the woman in good faith, under a warrant, intending to take her before a magistrate in Placer County, in obedience to its commands, they should find him not guilty, even though they might find that after reaching that county he unlawfully placed her in an insecure place, and thereby

allowed her to escape; but if they were satisfied beyond a reasonable doubt that he did not make the arrest in good faith, and that he carried her into Placer County without any intention of taking her before the magistrate issuing the warrant, or other magistrate, and did not in fact take her before any magistrate, then they must find him guilty.

The jury were also instructed that an officer is required to arrest any person named in a warrant which is delivered to him for that purpose, and that it must be presumed that his official duty was faithfully performed, unless the presumption was overcome by the evidence for the prosecution.

Thus the question of the defendant's good faith in what he did was fairly submitted to the jury; and his conviction was not made to depend upon the mere fact that he had not followed the authority given him by law, and the evidence was amply sufficient to justify the verdict of the jury.

6. The attorney-general concedes that he has found no law authorizing that portion of the judgment directing the appellant to pay a fee of twenty-five dollars to the district attorney. This portion of the judgment may be separated from the other, and we can correct it here without remanding the case.

Ordered that the judgment appealed from be and the same is hereby modified by striking therefrom the words "and that he pay the district attorney a fee of twenty-five dollars," and being so modified, the judgment and order are affirmed.

PATERSON, J., McFARLAND, J., GAROUTTE, J., SHARPSTEIN, J., HARRISON, J., and BEATTY, C. J., concurred.