[Crim. No. 1278. Fourth Dist. Oct. 25, 1960.]

THE PEOPLE, Respondent, v. LINDSAY SMITH et al., Appellants.

E. B. Pirtle, Jr., under appointment by the District Court of Appeal, for Appellants.

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

GRIFFIN, P. J. — Defendants-appellants Lindsay Smith and Jeanetta R. Taylor were charged in an information that on July 14, 1959, they did "sell, furnish *and* give away" a narcotic, to wit, marijuana, in violation of Health and Safety Code, section 11531. That section provides in part:

"Every person who . . . sells, furnishes, administers, *or* gives away, . . . any marijuana shall be punished by imprisonment in the county jail . . . or in the state prison" and if "previously convicted of any offense . . . described in this division" and such prior conviction is charged and found to be true and is admitted, defendant "shall be imprisoned in a state prison from 10 years to life." (Italics ours.)

Defendant Smith was charged with a prior conviction of "petty theft with a prior conviction of petty theft" and he served time therefor in a county jail, and he also was charged with a prior felony conviction, violation of Health and Safety Code, sections 11500 and 11712, with a prior narcotic misdemeanor conviction and he served a term therefor in the California State Prison. He pleaded not guilty to the main charge and denied the prior convictions. Later he admitted them. Defendant Taylor was charged with a prior conviction of a violation of Health and Safety Code, section 11500, and she served a term therefor in the California Institution for Women. She likewise pleaded not guilty and subsequently admitted the prior conviction.

After trial, the jury rendered a peculiar verdict. It found defendant Smith guilty of selling marijuana as charged in the information in one verdict; in another verdict it found him guilty of furnishing marijuana; and in still another, with giving it away. Similar verdicts were returned as to defendant Taylor. The trial court, on a motion for a new trial, stated that defendants were convicted by the jury of three different offenses, but since the sentences would run concurrently on all counts as though they were only one count, defendants could not be heard to complain. The judgment of commitment recited that the defendants were convicted of a felony, to wit, selling, furnishing and giving away marijuana, and it recited the prior convictions. No reference is made to the so-called

separate counts, but the judgment of commitment did recite that sentences should be served "in respect to one another as follows: 'concurrent.'"

Defendants, on appeal, argue that the evidence relates only to a sale to one James Massey on July 14, 1959, and accordingly defendants cannot be convicted of two or more separate offenses arising out of the same transaction unless each is a separate count and the offenses differ in their elements. (Citing *People* v. *Venable,* 25 Cal.App.2d 73 [76 P.2d 523]; *People* v. *Craig,* 17 Cal.2d 453 [110 P.2d 403].) It is likewise argued that when the Adult Authority considers the ultimate punishment, it may consider that defendants were convicted on three separate counts and might increase the punishment accordingly.

We conclude from the evidence and proceedings had that only one offense was committed, to wit, a sale on July 14, 1959, and the other two verdicts of the jury were not consistent with the evidence in this respect. (*People* v. *Logan,* 41 Cal.2d 279 [260 P.2d 20]; *People* v. *Roberts,* 40 Cal.2d 483 [254 P.2d 501]; *People* v. *Branch,* 119 Cal.App.2d 490, 496 [260 P.2d 27].) The commitments should have been issued for the crime charged in the information, one count, and accordingly there was no concurrent sentence to be served in this respect. The surplus verdicts should be set aside and the commitments should be modified accordingly. (*People* v. *Fick,* 89 Cal. 144 [26 P. 759]; *People* v. *Lopez,* 81 Cal.App. 199 [253 P. 169]; 14 Cal.Jur.2d 532, § 274; *People* v. *Mandell,* 90 Cal.App.2d 93 [202 P.2d 348].)

Next, it is argued that evidence of other and distinct alleged criminal acts and offenses, other than the one charged, was erroneously received in evidence over objections, and defendants were thereby prejudiced. (They cite such authority as *People* v. *Morgan,* 87 Cal.App.2d 674 [197 P.2d 413]; *People* v. *Eppstein,* 108 Cal.App. 72 [290 P. 1054].)

The facts show generally that one Massey, an undercover agent for the sheriff, talked with defendant Smith on July 13 about purchasing a *can* of marijuana, or one cigarette, and it was agreed that Massey would come back later and Smith would sell him some marijuana. There was a tape recording of this conversation made while Massey was seated in his car and Smith was talking to him while standing near the window. The recording machine had been placed there by the sheriff's office. This recording was played back in court and it corroborated Massey's story about the appointment. On July 14,

Massey went to appellants' apartment about 6 p.m. and had to knock on the window to raise the occupants. Defendant Taylor came to the door and asked him in. Defendant Smith was lying down in bed. Massey asked for "joints" (marijuana cigarettes) and inquired if they were "lush" or "weed." Smith said they had to be rolled. Defendant Taylor pulled an envelope or bag out of Smith's trousers. Smith took papers from the dresser and Taylor rolled one cigarette and Massey was charged one dollar for it. Massey took it to the officer, had it analyzed, and it was found to contain marijuana. Massey testified about a previous purchase of two cigarettes from Smith in April and another one on June 13 when he purchased three cigarettes. He further stated that on one occasion, about that time, Smith asked him to take defendant Taylor to the hospital in his car; that he did so and gave Smith three dollars for three marijuana cigarettes, and Smith offered him two of the cigarettes for his service; that on July 7 he saw Smith again and purchased a similar cigarette from him; that on June 20 he saw defendant Taylor at her home; that he went there with one Fain and gave Fain five dollars to make the "buy"; that Fain bought the "*joints*" and came back and gave him three dollars in change. Massey also testified that he saw Miss Taylor and Fain make the change; that Fain smoked one cigarette and he took the other to the officers. Apparently this cigarette was subsequently used in evidence in the case of *People* v. *Fain* and was again received in evidence in this case.

On August 8, at 3 a.m., sheriff's officers went to defendants' apartment, knocked on the door and were asked to identify themselves. The door was opened by Smith, who was dressed only in a pair of brown slacks. He was informed that he was under arrest in connection with narcotics and they went in and Miss Taylor was just coming out of the bedroom in a house dress. They placed her under arrest. A search of the apartment was conducted and several items, consisting of a spoon which later proved to contain traces of opium alkaloid, a test tube and 13 clear capsules, were found and placed on a bedroom dresser. When the debris taken from the pockets of Smith's trousers was analyzed, it showed traces of marijuana in it.

Defendants, in defense, denied generally any previous sale or possession of marijuana, admitted the prior convictions alleged and Smith denied it was his voice recorded on the recording tape. On cross-examination of the witness Massey,

they did show that he was being paid $18 a day for his service to the sheriff; that he subsequently was a prisoner in the county jail; that he had made purchases from other alleged narcotic distributors totalling 67 in all. On this appeal, defendants claim generally that the evidence of other sales and crimes, received in evidence, over objections, was inadmissible and was highly prejudicial to their case. (Citing such authority as *People* v. *Morgan, supra,* 87 Cal.App.2d 674 [197 P.2d 413], and *People* v. *Eppstein, supra,* 108 Cal.App. 72 [290 P. 1054].)

Evidence of other sales and similar offenses has been held admissible.

"There are exceptions to and limitations on the rule excluding evidence of other crimes or wrongful acts. Thus, where there is a clear connection between the two offenses which makes guilt of the one reasonably inferable from guilt of the other, where the two crimes or their evidence are intermixed, or where the former crime has a logical bearing and is relevant on the issue of the guilt of the accused of the crime charged, evidence of the commission of the other crime is admissible." (18 Cal.Jur.2d, § 137, p. 585.) See also *People* v. *Argentos,* 156 Cal. 720 [106 P. 65], and *People* v. *Smith,* 13 Cal.2d 223 [88 P.2d 682].

"Any evidence which may illuminate, the facts of the transaction under investigation is admissible, and in determining the relevancy of other crimes wide discretion is left to the trial judge." (*People* v. *Ash,* 88 Cal.App.2d 819, 828 [199 P.2d 711].)

Generally, evidence of other crimes, or of a propensity toward crime, is not admissible, but in a prosecution for sale of narcotics, evidence of other crimes may be admissible to show defendant's knowledge of the narcotic nature of the substance sold or to show a common plan, scheme or design. (*People* v. *Ballard,* 145 Cal.App.2d 94 [302 P.2d 89] ; *People* v. *Cervantes,* 177 Cal.App.2d 187 [2 Cal.Rptr. 107] ; 18 Cal.Jur.2d, § 138, p. 588.) No prejudicial error appears in this respect.

Prejudicial misconduct of the deputy district attorney is claimed, due to the fact that he showed the jurors a marijuana cigarette in evidence and stated, "If you have not seen those cigarettes [this is] what they look like." No error appears in this statement. (Code Civ. Proc., § 1954.)

It then appears that the prosecutor asked the deputy sheriff (a matron) if she had examined defendant Taylor's

arms for "needle marks." The court sustained an objection to the question and ordered the jury to disregard any reference to it. No prejudicial error resulted.

 Lastly, defendants claim that they did not receive a fair and impartial trial by reason of their being tried together. It is argued that there was evidence of Smith's prior offenses and criminal conduct which was not admissible against defendant Taylor and vice versa, and accordingly each was prejudiced by such testimony.

In the first instance, it does not appear that either sought a separate trial. (*People* v. *Van Valkenburg*, 111 Cal.App.2d 337, 343 [244 P.2d 750].) Secondly, there was no objection by either defendant as to the admission of the testimony and no request was made to the court to instruct the jury as to such a limitation. The court, however, did instruct the jury that "In the trial of this case there were instances where certain evidence was admitted as against one of the defendants, but denied admission as against the other." The court further instructed the jury ". . . when considering the case for or against any one certain defendant, to disregard completely any evidence that was admitted only as to another. . . ." No prejudicial error appears.

The surplus verdicts, i.e., those relating to "furnishing" and "giving away," are set aside. The judgment and order of commitment are modified by striking the word "concurrent" from the sentence in the commitment, i.e., "It is ordered that sentences shall be served in respect to one another as follows . . . 'concurrent.' "

As thus modified, the judgment and order denying new trial are affirmed.

Shepard, J., and Coughlin, J., concurred.